Argued February 7, affirmed February 20, 1963

# BRYANT *v.* STATE OF OREGON

378 P. 2d 951

*Ralph W. G. Wyckoff*, Salem, argued the cause and submitted a brief for appellant.

*C. L. Marsters*, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Robert Y. Thornton, Attorney General, and Harold W. Adams, Assistant Attorney General, Salem.

Before MCALLISTER, Chief Justice, and ROSSMAN, SLOAN, GOODWIN and LUSK, Justices.

GOODWIN, J.

This is a proceeding under ORS 138.510 to 138.680, the Post-Conviction Hearing Act. The petitioner has been released on parole. Accordingly, the proceedings are continued against the State of Oregon under the provisions of ORS 138.560 (2) and 138.570.

■ The petitioner was sentenced in 1960, in Lake County, for the crime of burglary not in a dwelling, and now seeks to have his sentence, and, he suggests, his conviction as well, set aside. The setting aside of the sentence, however, would not vacate the conviction in any event. *State v. Cloran*, 233 Or 400, 377 P2d 911.

The principal question is whether the circuit court loses jurisdiction of a convicted person who absconds from probation and remains absent from the state until after the expiration of the maximum period for which he could have been kept on probation. The petitioner relies upon *In re Keene*, 47 Ariz 191, 54 P2d 791 (1936), which appears to support his contention.

The state relies upon *State v. Ludwig,* 218 Or 483, 344 P2d 764 (1959), in which the facts differ in some respects from those of the case at bar.

On December 17, 1952, the petitioner pleaded guilty to the crime, which then carried a maximum penalty of five years in prison. § 23-513, OCLA. On January 7, 1953, he was released on his recognizance and was told to report to the local parole officer for instructions concerning probation. He was ordered to return to court on March 16, 1953, for the pronouncement of sentence or such further proceedings as the court might direct.

On March 16, 1953, the petitioner appeared and represented to the court that illness in his family made it inconvenient for him to be sentenced at that time. At his request the matter was continued until June 22, 1953. He was told to report to, and to remain under the supervision of, the Parole Board pending further order of the court. On April 23, 1953, upon a motion by the district attorney reciting that the "said defendant has failed, neglected and refused to comply with the rules and regulations of the Oregon State Board of Parole and Probation as directed in the Order granting probation * * *", the circuit court ordered the issuance of a bench warrant for his arrest. He was not located. The petitioner did not appear as ordered on June 22, 1953.

On January 14, 1957, the circuit court entered another order, which purported to revoke the petitioner's probation *ex parte,* and again ordered a bench warrant for his arrest. We give no effect to the attempt to revoke probation *ex parte.* Revocation is provided for in ORS 137.550, which requires a summary hearing. At this time, three years and ten months had passed since the petitioner had last been present in

court. The petitioner had not yet been sentenced. Neither had he been placed on probation for a specific length of time. We shall consider, however, that the petitioner was on probation when last seen in court.

In August of 1959, the petitioner was arrested in Texas, and in due course was returned to Oregon. On July 14, 1960, he was sentenced to the Oregon State Penitentiary.

At all material times, the sentencing court had authority to place convicted persons on probation for periods not to exceed five years' duration. ORS 137.510 (1) (b) and (2). The sentencing court had never fixed the term of the petitioner's probation because he did not appear in court at the time set for that purpose. The court had merely kept the matter of fixing the term open until a later date. Under ORS 137.550 a court may issue a bench warrant and cause a convicted person to be arrested any time within a period of probation previously fixed, or within the maximum period for which the person might have been sentenced if the imposition of sentence had not been suspended. In the pending matter, the imposition of sentence had been suspended.

The state contends that the time limitation in ORS 137.550 refers to the issuance of the warrant, but not to the execution thereof. See *Gholston v. Boles,* 305 F2d 162 (4th Cir 1962); *United States v. Smith,* 50 F Supp 464 (DC ED Pa 1943). The petitioner contends not only that the warrant must issue during the prescribed time period, but that the fugitive must also be arrested during that time. See *In re Keene,* supra. We prefer to follow the rule found in the cited federal cases.

This court, in *State v. Ludwig,* supra, held that a bench warrant issued within a two-year probationary

period previously fixed by the court was effective to continue the jurisdiction of the court even though the fugitive was not brought into court until eleven months after his probationary term had expired. The question in the *Ludwig* case was simplified, perhaps, by the fact that the sentencing court in that case could have placed the convicted person on probation for five years in the first instance. Had the court done so, it then would have been acting within the maximum period of probation fixed by statute in any event. We do not consider the five-year provision significant, however, in the analysis of the *Ludwig* case. The same rule would seem to apply to this case despite the difference between the factual situations. In each case the arrest came after the probation would have expired. We need not decide now whether the petitioner's probation expired when he violated it and fled the state, or at the end of the time during which he could have been placed on probation had he appeared in court as ordered. It is clear that whatever probation the petitioner had formerly enjoyed was a dead letter and he was a fugitive from justice when next he appeared in court.

The intent of ORS 137.550 is to permit the court to enter such orders as may be necessary to carry out the terms of the probation, even though the convicted person, by absconding from supervision, may delay the execution of a particular order. The situation is analogous to that of a convicted person who absconds while free on bail. Such an exercise of self-help, so far as we can learn, has not been deemed sufficient to oust the convicting court of its jurisdiction to pronounce sentence. We do not believe the legislature intended to put it within the power of convicted persons to avoid all liability for their crimes merely by

absconding from probation and remaining absent as fugitives until five years have passed. If such a scheme for banishing our criminals had been contemplated by the Assembly, it is likely that such an intent would have been clearly expressed in the statutes. See *In re Lujan,* 18 NM 310, 137 P 587 (1913). Transportation is not an approved penalty in this state, and we doubt that the legislature intended to have it accomplished indirectly. See *In re Hinson,* 156 NC 250, 72 SE 310, 36 LRA(ns) 352 (1911).

■ We conclude that the court was not ousted of its jurisdiction to pronounce sentence. The petitioner fled the state and remained in exile during the period which he might have served on probation had he complied with the orders of the court. After violating his probation, the petitioner cannot be heard to say that his probation continued until terminated by the passage of time. The warrants for the petitioner's arrest were timely. By its orders, the court preserved its jurisdiction to proceed with the pending matter as soon as the warrants could be executed. Accordingly, there was no error in pronouncing sentence.

Affirmed.